# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR RAMOS BAUTISTA,<br><br>　　　　　　　　Petitioner,<br>vs.<br><br>MICHAEL CHERTOFF, et al.,<br><br>　　　　　　　　Respondent. | CASE NO. 08cv0684 JM(NLS)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING MOTION FOR BOND HEARING |

Petitioner Cesar Ramos Bautista, a detainee in the custody of the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his federal detention and seeking release pending exhaustion of his appeal before the Ninth Circuit. Respondent opposes the Petition and the request for a supervision hearing. Pursuant to Local Rule 7.1(d)(1), this matter is appropriate for decision without oral argument. For the reasons set forth below, the Petition is denied as is the request for a bond hearing.

## BACKGROUND

Petitioner, a citizen of the Philippines, entered the United States in 1984 as an immigrant. (Gov't Exh. B). On January 10, 2002, ICE first commenced removal proceedings against Petitioner based upon the following criminal activity: second degree burglary conviction in violation of §460(b) of the California Penal Code on December 18, 1998; a controlled substance conviction on May 4, 2000; and petty theft with priors conviction on August 29, 2001. ICE charged Petitioner with

1  deportability based upon his controlled substance conviction. Petitioner was released on bond pending
2  completion of his removal proceedings. (Gov't Exh. D). Ultimately, the Immigration Judge ("IJ")
3  granted Petitioner's request for cancellation of removal. (Gov't Exh. E).

4      Petitioner continued to violate state criminal laws and, December 21, 2006 ICE reinitiated
5  removal proceedings against Petitioner. Petitioner was charged with deportability as an aggravated
6  felon based upon his November 15, 2004 and June 20, 2006 felony convictions for Commercial
7  Burglary in violation of §on 460(b) of California Penal Code. On January 31, 2007 the IJ found
8  Petitioner removable and ineligible for any relief. On May 14, 2007, the order or removal became
9  final when the BIA affirmed the IJ's removal order. Petitioner then filed a petition for review with
10 the Ninth Circuit Court of Appeals and a request to stay his removal.

11     Following the BIA's determination, on May 24, 2007, ICE submitted travel documents to the
12 Consulate of the Philippines. (Gov't Exh. A). "The Philippine Consulate indicated that it would not
13 issue travel documents given Petitioner's appeal." (Return at p.2:20-21). The Philippine Consulate
14 also indicated that it would issue travel documents upon Petitioner's consent to repatriation.

15     On August 8, 2007 ICE conducted a post-order custody review and determined that Petitioner
16 Presented an extreme flight risk and a danger to the community pursuant to 8 C.F.R. §241.1.
17 Subsequently, on November 16, 2007 the Ninth Circuit denied Petitioner's stay request and ICE
18 reinitiated a travel document request. (Gov't Exh. A, Reyna Decl.).

19     The Philippine Government has indicated that travel documents would issue to Petitioner under
20 any one of two circumstances: (1) Petitioner completely exhaust his judicial remedies (i.e. the Ninth
21 Circuit appeal) or (2) Petitioner request the issuance of travel documents. (Reyna Decl. ¶¶ 7-10). As
22 the BIA appeal remains pending and Petitioner has not requested travel documents, he remains in ICE
23 custody.

24 **DISCUSSION**

25 **The Petition for Writ of Habeas Corpus**

26     Petitioner seeks an order releasing him from ICE detention, under an order of supervision, on
27 the ground that his continued indefinite detention (1) is not authorized by any federal statute and (2)
28 violates due process as established in <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001), <u>Tijani v. Willis</u>, 430

1  F.3d 1241 (9th Cir. 2005), and Nadarajah v. Gonzales, 443 F.3d 1069 (9th Cir. 2006).  Petitioner's arguments are not persuasive.

In the ordinary course, an alien subject to a final order of removal must be removed from the country within 90 days after the removal order becomes final.  8 U.S.C. §§1231(a)(1), 1231(a)(3). However, an alien can be held beyond the normal 90 day removal period when the Attorney General determines the alien "to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [8 U.S.C. §1231(a)(3)]."  8 U.S.C. §1231(a)(6).  On August 8, 2007 the Attorney General conducted a custody review and denied Petitioner release.  The Deputy Field Director concluded that Petitioner presented a flight risk and danger to the community. (Gov't Exh. O).  While Petitioner's detention is authorized by §1231(a), this provision is not without limitation, however, and does not permit the Attorney General to indefinitely detain aliens.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court limited the ability of the Attorney General to indefinitely detain an alien subject to a final order of removal.  A habeas court must determine "whether the detention in question exceeds a period reasonably necessary to secure removal."  Id. at 699.  In recognition that the executive process to effectuate removal may involve "difficult judgments," including the negotiation of repatriation agreements, the Supreme Court held that the Attorney General may presumptively detain an alien subject to a final removal order for a period of six months.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.  Once the court concludes that the alien's removal is no longer reasonably foreseeable, the alien must be released subject to appropriate conditions of release, and "the alien may no doubt be returned to custody upon a violation of those conditions."  Id. at 700.

Here, the presumptive 6-month period has passed. Petitioner argues that there is no significant

1  likelihood of removal because he continues to pursue the appeal from the BIA's order affirming the
2  final order of removal and therefore his detention is indefinite. The Consulate of the Philippines has
3  represented that travel documents would issue upon exhaustion of Petitioner's appeal or upon
4  Petitioner's consent for the issuance of travel documents. (Reyna Decl.). Petitioner continues to
5  pursue his appeal and he has declined to request the issuance of travel documents. An individual, such
6  as Petitioner, becomes an indefinite detainee under circumstances which make the individuals eventual
7  removal uncertain. Thus, an indefinite detainee resides in a state of limbo as he cannot be admitted
8  into the country nor can he be removed as no country will accept the individual. For example, in
9  Zadvydas, the petitioners were once resident aliens who were ordered removed from the country but
10 whose countries of origin refused to accept their repatriation. Based upon their status as aliens who
11 had entered the United States, the Supreme Court concluded that the "indefinite detention of an alien
12 would raise a serious constitutional problem." Id. at 690.

13 Here, however, Petitioner is in a fundamentally different position than the petitioners in
14 Zadvydas as Petitioner is not without options. Petitioner is not an indefinite detainee like Zadvydas
15 for the simple reason that he is free to return to the Philippines at any time. Petitioner holds the liberty
16 keys in his pocket. He can depart the United States at any time as there is no showing in the record
17 that the Philippines have refused his repatriation. Thus, his detention is neither mandatory nor
18 indefinite as he possesses the power to effectuate his release from detention at any time. Under these
19 circumstances, Petitioner's continued detention does not violate the Fifth Amendment.

20 Petitioner simply fails to establish that there is good reason to believe that he will not be
21 removed in the foreseeable future. Petitioner's appeal, filed on May 25, 2007, is fully briefed. On
22 June 17, 2008 the Ninth Circuit ordered that Petitioner's appeal be held in abeyance pending
23 resolution of another appeal. (Gov't Exh. N). While the precise date of resolution of the appeal is not
24 presently known, the court finds that there is a significant likelihood of removal in the reasonably
25 foreseeable future. Prieto-Romero v. Clark, 534 F.3d 1053, 1063 (9th Cir. 2008) (the fact that an
26 appeal is pending "does not render [petitioner's] detention indefinite in the sense the Supreme Court
27 found constitutionally problematic in Zadvydas"). Implicit in both Ma v. Ashcroft, 257 F.3d 1095
28 (9th Cir. 2002) and Zadvydas is that the reason causing a petitioner's indefinite detention must arise

1  from circumstances outside the petitioner's control.  For example, in <u>Ma</u> the United States and
2  Cambodia did not have a repatriation agreement and the Ninth Circuit concluded "that there was an
3  insufficient showing that future negotiations were likely to lead to a repatriation agreement within the
4  reasonably foreseeable future. <u>Ma</u>, 257 F.3d at 1104. Accordingly, Petitioner fails to satisfy his initial
5  burden under <u>Zadvydas</u> and, even if he did, the Government has come forward with sufficient
6  evidence supporting the conclusion that Petitioner's removal is reasonable foreseeable. (Gov't Exhs.
7  A-P).

8       Petitioner also argues that he is entitled to release, subject to an order of supervision, under
9  <u>Tijani</u> and <u>Nadarajah</u>.  The court concludes that the three-paragraph majority opinion in <u>Tijani</u> fails
10 to provide sufficient guidance on the issues raised by Petitioner herein.  In <u>Nadarajah</u> the petitioner
11 fled to the United States from Sri Lanka and applied for asylum, withholding of removal, and
12 protection under the Convention Against Torture.  443 F.3d at 1071.  The petitioner, detained in
13 custody for five years, had never been charged, let alone convicted, of a crime.  <u>Id.</u>  Despite having
14 been granted asylum twice, as well as protection under the Convention Against Torture, Nadarajah
15 remained in custody.  The Ninth Circuit, applying <u>Zadvydas</u>, concluded that Nadaraja had
16 demonstrated "that there is no significant likelihood of his removal in the reasonably foreseeable
17 future."  <u>Id.</u> at 1081.  The Ninth Circuit noted that "the government is not entitled to remove
18 Nadarajah to Sri Lanka, and no other country has been identified to which Nadarajah might be
19 removed.  Therefore, examining the circumstances objectively, one cannot say that his removal is
20 reasonably foreseeable."  <u>Id.</u> at 1082.  The remedy consisted of ordering a bail hearing before an
21 immigration judge, and not releasing the individual from custodial supervision.

22      Here, unlike the petitioner in <u>Nadarajah</u>, Petitioner has several convictions related to theft and
23 controlled substances crimes.  The IJ determined that Petitioner's 2006 commercial burglary
24 conviction rendered him an aggravated felon within the meaning of 8 U.S.C. §1227(a)(2)(A)(iii).
25 Further, unlike <u>Nadarajah</u>, Petitioner, at his sole option, can determine his release date. Upon request,
26 the Consulate of Philippines will issue travel documents to Petitioner and he will be removed to the
27
28

1  Philippines. (Reyna Decl.).[1]   Lastly, unlike petitioners in Tijani and Nadarajah, who were held in
2  custody for about 32 and 60 months, respectively, Petitioner has only been in ICE custody since
3  January 8, 2007.  See Prieto-Romero, 534 F.3d at 1056 (continued three year civil detention of
4  individual subject to a final order of removal authorized by statute), far less than the 20 months that
5  Petitioner has been in custody.

6  Under the present circumstances, Petitioner "may be held in confinement until it has been
7  determined that there is no significant likelihood of removal in the reasonably foreseeable future."
8  Zadvydas, 121 U.S. at 701. As Petitioner's detention is authorized by statute, 8 U.S.C. §1231(a), and
9  does not violate the Fifth Amendment as articulated in Zadvydas, the court denies the Petition.

**The Request For a Supervision Hearing**

11  Petitioner also requests that he be released from custody under an order of supervision. A
12  complicated statutory framework governs detention cases. See Prieto-Romero, 534 F.3d at 1058-59.
13  The Ninth Circuit recently held that immigration detainees subject to "prolonged detention pending
14  judicial review of their final order of removal" have a Fifth Amendment due process right to "an
15  individualized determination of his [or her] dangerousness or flight risk." Casas-Castrillon, 535 F.3d
16  942, 951 (9th Cir. 2008); Tijani, 430 F.3d at 1242. Whether Petitioner is entitled to this newly created
17  right "turns in part on locating [the petitioner] within the statutory framework of detention authority
18  provided by" §§1226 and 1231. Casas-Castrillon, 535 F.3d at 945. In Casas-Castrillon and Tijani,
19  the petitioners had administratively exhausted their appeals but, pursuant to §1252(b)(3)(B), the Ninth
20  Circuit stayed their removal. In light of the stay, the Ninth Circuit concluded that §1226(a), which
21  allows the Attorney General to detain any alien "pending a decision on whether the alien is to be
22  removed from the United States," 8 U.S.C. §1226(a), and not §1231(a), targeted to the post-removal
23  period, provided the statutory authority for an individual's continued detention. Id.

---

[1] The court rejects the Government's suggestion, primarily supported by the authority submitted in a Notice of Recent Decision, (Docket No. 14), that Petitioner's refusal to sign the consent to repatriation agreement requested by the Consulate of Philippines in order to obtain travel documents  demonstrates that Petitioner is uncooperative within the meaning of §1231(a)(1)(C). Whether §1231(c)(1)(C) authorizes the detention of an individual who refuses to sign a written consent to repatriation while an appeal is pending, remains an open question and need not be resolved herein as Petitioner's detention is authorized by §1231(a)(6).

1   The Ninth Circuit concluded that the prolonged detention of an individual under §1226(a) without "providing him a neutral forum in which to contest the necessity of his continued detention," Casas-Castrillon, 535 F.3d at 949, "would raise serious constitutional concerns." Id. at 950. The Ninth Circuit then determined that the prolonged detention of an alien pursuant to §1226(a) gives rise to a procedural due process right to a hearing where "an alien is entitled to release on bond unless the 'government establishes that he is a flight risk or will be a danger to the community.'" Id. at 951(seven year detention gives rise to a bond hearing); Tijani, 430 F.3d. at1242 (32 month period of detention gives rise to a bond hearing).

Here, the court concludes that Petitioner is not entitled to a bond-type hearing for several reasons. First, unlike Casas-Castrillon and Tijani, Petitioner herein is detained pursuant to §1231(a) and not §1226(a), the applicable statute in both authorities. Second, as a detainee pursuant to §1231(a), Petitioner has already had a hearing to determine the necessity of his continued detention. At the August 8, 2007 hearing it was determined that Petitioner presented a flight risk and a danger to the community. (Gov't Exh. O). Third, Petitioner's detention is not sufficiently prolonged to raise the due process concerns identified in Casas-Castrillon (total detention of seven years) and Tijani (total detention of 32 months). Accordingly, the court denies Petitioner's request for a bond hearing

In sum, the court denies the petition for writ of habeas corpus and denies Petitioner's request for a bond hearing. The Clerk of Court is instructed to close the file.

**IT IS SO ORDERED.**

DATED: September 9, 2008

Hon. Jeffrey T. Miller
United States District Judge

cc:        All parties